Our next petitioner is Mr. Mark Schwartz for 18-2337. We'll hear first from Mr. Schwartz. Mark Schwartz Good morning, your honors. May it please the court, my name is Mark Schwartz and I am pro bono counsel for the petitioner Mauricio Gonzalez Ruano. Mr. Ruano was granted relief under the Convention Against Torture after he testified credibly that members of a Mexican drug cartel threatened him at gunpoint, threatened his children, raped his wife, kidnapped him, forced him to witness two execution-style beheadings, and placed a metal cable around his neck and pulled it tight. Based on that testimony and other evidence in the record, the immigration judge found that Mr. Ruano had been tortured, that public officials in that he was likely to experience torture again if removed to Mexico. The government did not appeal those findings of fact or the grant of relief under the Convention Against Torture, and the grant of cat relief is not before this court. In addition, neither the cognizability of the particular social group of Mr. Ruano's immediate family nor his membership in that is whether Mr. Ruano's established persecution that he suffered at the hands of the cartel was on account of membership in that particular social group of his family. And just to clarify, is the social group that you're advocating for his family or his wife's family? How are you defining the family? Well, we defined it as his family for reasons I'm not sure of. Both the immigration judge and the Board of Immigration Appeals switched that to say her family. I don't think it matters because they're both members of one another's family. Okay. Can I ask you just, I don't think I've ever seen a case before where we've seen a request for asylum denied, but CAT granted, and we get a petition for review. What are the practical stakes for Mr. Ruano and his family and the difference? The main one, Judge, is that Mr. Ruano wants to ensure permanent status here, both because it's better for him in the short term, but also because he would like the ability eventually to become a citizen of the United States. So an asylee is a lawful permanent resident, but not if it's just CAT? My understanding under the CAT is that the government could at some point in the future retry him if circumstances in Mexico change. It's better relief. And may I ask what's her immigration status at this point? She is in removal proceedings. I don't represent her. She's in California. I heard from her counsel yesterday that her merits hearing is scheduled for 2021. Has her asylum petition been ruled on? No, again, she's set for a hearing on that. Okay, not on the removal, but on all together. I'm sorry. She has sought asylum, filed an application, I believe that was timely, and her trial is scheduled for 2021, July, I believe. Where are their children? In California, as is my client. Okay. So to satisfy his burden, Mr. Ruano was required to establish that membership in that group was at least one central reason for the persecution. And on that principal issue that's before the court today, the facts are undisputed. Mr. Ruano had three children. Mr. Ruano, that they now owned his wife, and that they would kill him if he didn't leave them. Were they trying to get Catalina to go and join the cartel? Or were they, I was unclear about what, were they just trying to take him out? Or were they trying, for the sake of taking him out? Or were they trying to get her to join up? I don't know that it was a recruitment. So I don't know that it was necessarily that they wanted her to be part of the cartel. I think it was more that they wanted to assert their ownership and control over her, whether because they found her attractive or probably because it was part of the broader policy of this cartel to terrorize people, use sexual violence when necessary to obtain dominance in the community. During the attacks, the cartel also threatened Mr. Ruano's two children. They stated that they knew his name, his son's names, knew where he lived. And finally, as I said, they raped Catalina. What does the evidence show about the circumstances of that statement that they knew his son's names or children's names and where they lived? Didn't you say, was that a gunpoint? Yes, so there was a gun pointed at Mr. Ruano's neck and one of the members said, we know your children's names and we know where you live. Now the government has said that's not a threat. I equivocated a little when I wrote the brief about using the word outrageous, but that's outrageous. Of course that's a threat. Because there are no disputed questions of fact, the nexus inquiry that's before this court is a question of law. And I say that because in Dominguez Pulido, a recent case, the only way the court was able to address the nexus question was by first finding that the nexus question is a question of law. But even under the substantial evidence test, which is what the government contends applies, the evidence compels a finding that Mr. Ruano's membership in his group was a central reason for the persecution. In this case, like in the court's recent decision in WGA, the persecutor's own words revealed their motivation. And based on those words, any reasonable fact finder would have to conclude that membership in the group of the family was a central reason for the persecution. Accordingly, under the court's precedence and under the language of the statute, both the immigration judge and the board erred when they concluded that substantial evidence did not support a finding that Mr. Ruano's membership in his group was a central reason for the persecution. The board found that it was the cartel's interest in Catalina, their personal interest and his personal interest in Catalina that was driving this, as opposed to the social group. How do we differentiate between the two? Well, it's interesting that you use personal interest because that's exactly where I was going, Judge. It could have been part personal. In WGA, the petitioner conceded that a gang had a personal vendetta against him, conceded that. But nonetheless, the question was what this court said is the government didn't ask why there was that personal vendetta. And the reason that this court concluded was because he was related to his brother. And that's the same thing that we have here. The reason why Mr. Ruano was selected for persecution is because he was related to his wife. And so whether or not there's a personal component to the violence, the question is whether membership in the group here, marriage to his wife, was a central reason. And because we know exactly what the persecutor said, we know that it was a central reason. It was the reason. Could you have a group of two? I mean, he's being persecuted here. And I agree the children were threatened, but it was a threat. They were threatening the children by way of trying to threaten him. I mean, really, he's being persecuted here because he is her husband. What if there were no children in the picture? I don't think the behavior of the cartel would have changed. It's an oddity about this case. I don't know. I think that a group of two could be a particular social group, but certainly a group of four and certainly a family. And that is what we have here. Yes, I agree with you. And so I don't know that I can answer the question about two. I know that there is some case law that says one might not be a particular social group. But the cognizability of the group here is not before the court. No, I understand that. But in thinking about whether this was on account of his membership in the family or her husband, I take the board's reasoning to be that if this was because of his status as Catalina's husband, it wasn't, it's as Judge Sainee says, it's kind of intertwined, that it wasn't really because of his membership in the family. It was a unique relationship that he had. I understand. Again, I would cite WGA, which I think is precisely on point for this particular issue. There, it was a brother who had left the gang, and the gang members were threatening and persecuting the petitioner to find out where the brother was. And it was really just those two. And I see that I'm into my rebuttal time, so unless the court has additional questions, I will rest for now. Okay, thank you, Mr. Schwartz. For the government, Ms. Greer. May it please the court, I'm Christina Greer on behalf of the Attorney General. Your Honors, first of all, asylum is a very narrow form of relief. It is not available to all who've been harmed or all who've been targeted for crime. It is only available to those who have been or will be persecuted on account of a protected ground, which is the protected ground and the on account of are the government did not challenge that Mr. Ruano qualified for cat relief. The question here is whether he established a protected ground with the, I know it wasn't brought up in the opening argument, but it was in the briefing about the group individuals who've refused to follow CJNG orders, but also whether he established that his harm was on account of a particular social group of his family. And I'll start with that first point. Your Honors, first of all, the substantial evidence standard does apply here. In Dominguez-Colito, reading the paragraph where the court states that de novo applies, it's clear that they were applying de novo review to the PSG question, not the nexus question. And in WGA, Melnick, Plaza Ramirez, Zakivaev, all of those substantial evidence was applied to the nexus question. Because while the facts are undisputed, the facts as he stated them, there are inferences that are drawn from those facts that are still made from inferences from the testimony, is what was the motive. Nexus, or on account of, is a motive requirement. So the question is, why did the persecutors target Mr. Ruano? And that's where Your Honors' question about whether the group is Mr. Ruano's family or his wife's family is really important here. Because if the question is, was his family being targeted on account of it being a family, that there's some sort of family qua family, that there's animus against this family for some reason, there's no evidence of that. Do you think that's required? It's not necessarily required, but it is one factor. It would be powerful. It would. But the question is whether it's required, given all the other evidence we have here. It's not required. Under Melnick, it was a consideration, as well as under Plaza-Ramirez. And we argue that this case is more like Plaza-Ramirez than WGA. How do we draw the distinction between what the board found was that the cartel's interest was in plaintiff, in the petitioner here, it was personal, as opposed to his relationship with the social group, the family. But it was personal because of his wife. So what's the distinction? How are we supposed to interpret personal because of his relationship with his wife, versus because they're targeting the social group, namely his family? And that's where that animus factor does come in. But if it's not required, which you conceded it's not required, how do we draw the distinction between those two? This is sort of a balancing of different factors. It is substantial evidence, so the question is whether the record compels the conclusion that this was not a personal vendetta situation. Is that the question, or whether there's substantial evidence to support that it wasn't a central factor? It would be ultimately whether substantial evidence... Because it doesn't have to be the only, it's a central factor. Correct. It does not have to be the only factor, but it can't be incidental. And so that's where our argument that anyone who would have gotten in the way of Catalina going with the gang, so a bodyguard, a friend, a neighbor, a roommate... But how do we know that? There's no evidence that they went after anybody else who got in the way, or that anybody else tried to get in the way. There's not, and that's why those inferences drawn by the fact finder are important, and that's why it's a substantial evidence standard. Could you address the Fourth Circuit's opinion in Hernandez-Avalos against Lynch, which looks awfully similar to this case? Are you familiar with that? It was in the library. Yes, I am familiar with Hernandez-Avalos, and Fourth Circuit nexus law does differ from Seventh Circuit nexus law. We're all doing American law, right? We are. However, there are large distinctions between the circuits, and in nexus this is one of those distinctions. But in Seventh Circuit law, looking at WGA versus Plaza Ramirez, you have a family that's being targeted as a family, where other family members are harmed. Not in Plaza Ramirez. Not in Plaza Ramirez. And Plaza Ramirez is more like this case, where nexus was not found. Do you think the boys were threatened? The boys, and this is, again, where the definition of the social group is vital. Let me put it this way. Could a rational trier of fact here on this record find that they were not being threatened? They could. How? They could find that the threats to the boys weren't necessarily to threaten the boys, but to threaten Ruano. Why? Because... What's the point of threatening Ruano, other than to get at his wife? It was to get him out of the way, as well as he also argued that it was because he refused their orders. And so that would be incompatible, potentially, with his argument that this was based on his family, and that that was one central reason. Getting him out of the way is still because of his wife. It is, but there is a difference between being put in the situation because of the family membership, and the family membership being a motivating factor. You just said that wasn't required, though. It's not required, but because this is a factual finding, it's not a legal determination, part of the question is all of these factors. And what was the motivation? What were the different motivations? How are they put into tiers? Those are all, or how do we determine what's incidental? How do we determine what's central? Counsel, I want to follow up on Judge Hamilton's question. So you said that the threats to the children, that a rational trier of fact, could find that those were just purely directed towards Ruano. Yes. What if they'd been followed through on? What if the children had been harmed or even killed in an effort to get at Ruano? That would be a different case. Then the children would be threatened, and that would look more like WGA, where the children are targeted purely to get at someone else. So why do you think, I'm still having trouble, but understanding how somebody would say the children were threatened, but it was incidental to their relationship to their parents. I'm not sure I understand the question. I'm not sure I do either. I don't understand the government's position, frankly, and I'm astonished that we're even hearing this case. My apologies, Your Honor. And I think you would agree Catalina was certainly harmed. She was harmed, yes. But he didn't argue that she was harmed because of him. And so she is sort of a principal, and he is a separate principal, because the targeting was not to get at her. It was to get him out of the way, is what the IJ drew from it. How does that make any logical sense? Because the only way to get at her is to get him out of the way, right? And the only way to get him out of the way is to have him not refuse their demands, right, or to kill him. Yes. And that is part of the CAT analysis, was that the court did determine that he would be harmed in the future, and so he did get some sort of protection. But he did not establish that it was because of his family membership, such that his family membership was a motivation as a family, not that there was some sort of animus, which, yes, is not a requirement, but is one factor. Another is that no one else was harmed outside of him because of him. And his wife was raped, and his children were threatened. This is a lot more like WGA than it is Plaza Ramirez. Yes, Your Honor. It looked like you had a question. No. So the last thing that I would want to talk about briefly is that, looking at pages 344.1 in the briefing, there was discussion about other family members being harmed, such as brothers, and nothing in the record shows that, beginning on page 344 in the record, are the letters from other family members. Does that matter if you define the group as his immediate family? That's not how he defined it. It's unclear how he defined it, whether it's immediate family or a broader family, as in his briefing and discussion. If we define it as his immediate family, does that matter? It would matter. That is a question. Under a matter of WIC, which is not in the briefing, but this question didn't come up in the briefing, it is the petitioner's burden to establish the limits of the group so that we know what the group is, so we know what we're litigating. And so we would request that this case be remanded for a more definite statement about what the group is, if the court would like to have a more definite statement of immediate family or some other grouping. If there are no other questions, thank you. Thank you, counsel. Let's see, Mr. Schwartz, any rebuttals? Quickly, Your Honor, Dominguez-Polito says that nexus is a colorable legal question. That's what the court said. Judge St. Eve, I think, was getting to the nub of the issue when she was asking about what it really means for it to be personal. There are mixed motive cases. Almost all of these asylum cases are mixed motive cases. So the fact that there's a personal component isn't really necessary or relevant to the question of whether the group that we defined was a reason for the persecution. And getting to that, what the group is, we defined it in every filing from the immigration court all the way up to the board to this court as the immediate family. It's his wife, it's his children. We did include many affidavits of other family members, which we put in the record for the immigration judge to show the credibility of his story. We had numerous other family members who spoke about the mark around his neck after he got back from being kidnapped. You also put in evidence that he was still being threatened through those other family members. We did that as well. And finally, of course, I think as Judge Hamilton seems to agree, is the case that it wasn't just Mr. Ruano who was harmed, it was his wife and his two children. With respect to whether this is a WGA case or a Plaza Ramirez case, Plaza Ramirez, there the petitioner admitted that he had been singled out because the persecutors thought he was a member of a rival gang. There wasn't any direct evidence or circumstantial evidence in the form of harm to other family members to support a family-based nexus claim there. In WGA, which I really think is on all fours with this case, you had a brother and the petitioner was singled out because the gang wanted to find out where the brother was. Again, it was the same type of going after one individual family member in part to get at another. If the court has no other questions, we would ask that the board's decision be reversed and that the asylum claim be granted. Thank you. Thanks to both counsel. The case is taken under advisement.